FILED
AUG 2 2 2006
CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

# United States District Court

_____ MIDDLE _____ DISTRICT OF _____ ALABAMA _____

**In the matter of the Search of**
(Name, address or brief description of person, property or premises to be searched)

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 2:06mj86-SRW

1324 Summerfield Place,
Montgomery, Alabama 36117-3233

I _____ Neill Thompson, _____ being duly sworn depose and say:

I am an agent _assigned to the Drug Enforcement Agency_ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

1324 Summerfield Place, Montgomery, Alabama, 36117-3233,

in the _____ Middle _____ District of _____ Alabama _____
there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachment A.**

which is (state one or more bases for search set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

property that constitutes evidence of the commission of a criminal offense,

concerning a violation of Title __21__ United States Code, Section(s) __846__

The facts to support the issuance of a Search Warrant are as follows:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

August 9, 2006 _____ at _____ Montgomery, Alabama _____
Date                                                                                          City and State

SUSAN RUSS WALKER
United States Magistrate Judge                        _____
Name & Title of Judicial Officer                      Signature of Judicial Officer

## ATTACHMENT "A"

<u>Property to be Seized</u>

1. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing, and distribution of controlled substances.

2. Papers, tickets, notes, schedules receipts, and other items relating to domestic and interstate travel.

3. Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks, receipts, pass books, bank checks, safety deposit box keys, and other items evidencing the obtaining, secreting, transferring, and/or concealing of assets and the obtaining, secreting, transferring, concealing, and/or expending of money;

4. United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal narcotics trafficking.

5. Photographs, video tapes in particular, of co-conspirators, of assets and/or of controlled substances.

6. Receipts for items evidencing the expenditure of the proceeds of drug distribution, including, but not limited to, clothing, furniture, and electronic equipment.

7. Paraphernalia for packaging, cutting, weighing, converting, and distributing controlled substances, including, but not limited to scales, baggies, spoons, walkie-talkies, CB's, night-vision devices, two-way radios, police scanners, cellular phones, and beepers.

8. Indicia of occupancy and residency, and/or ownership of the premises, including but not limited to, utility and telephone bills, cancelled envelopes, and keys.

## AFFIDAVIT

I, Neill Thompson, having appeared before the undersigned United States Magistrate, and having been duly sworn, deposes and states:

This affidavit, which is based upon personal knowledge and knowledge obtained from other law enforcement officers, is submitted in support of an application for warrants to search the following properties and persons:

1324 Summerfield Place, Montgomery, Alabama

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code. I am empowered by law to conduct investigations of and to make arrests for the offenses enumerated in Section 2515, Title 18, United States Code.

2. Since June 1998 I have been so employed as a Special Agent of the Drug Enforcement Administration (DEA). Prior to that time I was employed as a Police Officer with the Tuscaloosa, Alabama Police Department for approximately 12 years. I have participated in investigations involving organized crime and narcotics activities. I have received specialized training in identifying and investigating narcotics distribution enterprises and their related criminal activities, including monetary and asset laundering. I have gained investigative specialization in the area of methamphetamine, cocaine, marijuana, and/or poly-drug conspiracies. I have also written and executed numerous search and seizure warrants for narcotics, dangerous drugs, records, books and proceeds derived as a result of this illegal activity. Presently, I am assigned to the DEA office in Montgomery, Alabama.

3. Over the past eighteen months, and on a consistent basis, agents assigned to the Montgomery DEA Office and to the Montgomery Police Department Special Operations Unit (a specialized unit tasked with enforcing narcotics violations) have received information regarding Santo COLEMAN and his ongoing illegal drug trafficking activity. I personally have received information from several reliable confidential sources who state that COLEMAN is a multi-kilogram cocaine distributor, and also distributes large quantities of marijuana (hundreds of pounds) in the Montgomery area.

4. In May 2006 a reliable Confidential Source, hereafter referred to as CS, told me and Task Force Officer Edwin Spivey that COLEMAN was still trafficking large amounts of marijuana and cocaine and was living with his girlfriend, known only to the CS as "Pam", in east Montgomery. The CS personally pointed out the residence located at 1324 Summerfield Place, Montgomery, Alabama, (the residence) as being COLEMAN'S residence. The CS also said that COLEMAN is attempting to be very secretive about his residence, for fear not only of law enforcement but also of individuals who may try and rob or burglarize COLEMAN at the residence. The CS said that the house is equipped with a video surveillance system and TFO Spivey and

1

I noticed cameras around the perimeter of the residence. We observed a Ford pickup truck parked in the driveway bearing Alabama license PTHICK. Alabama license PTHICK is assigned to Pamela THICKLIN, on a 2001 Ford pickup truck, at 1324 Summerfield Place, Montgomery, Alabama.

5. The said CS has provided me and other agents with information regarding criminal activity on a consistent basis over the past year. I have conducted investigations based on the CS' information and have found the information to be true, correct, and reliable. I have also seized illegal drugs and arrested individuals for the violations involving illegal drugs as a result of the CS' information.

6. On August 8, 2006 the Montgomery DEA Office was contacted after a Hispanic male was stopped on Interstate 65 and found to be in possession of three kilograms of cocaine. The Hispanic male, Alberto VILLAREAL, agreed to cooperate with law enforcement in furthering the investigation by assisting in a "controlled delivery" of the cocaine. VILLAREAL made recorded telephone calls with and met COLEMAN in Montgomery. When officers attempted to execute an arrest on COLEMAN, he fled in a 2006 Chevrolet pickup truck. COLEMAN'S truck was involved in a collision and he then fled on foot and was not apprehended. A search of COLEMAN'S truck revealed documents which show COLEMAN'S address as 3236 Susan Drive, Montgomery, Alabama.

7. Later that night, SA Thompson and TFO Spivey went to 1324 Summerfield Place and observed four vehicles parked in the driveway and on the street. The aforementioned Ford pickup truck was parked in the driveway along with a Nissan Altima registered to THICKLIN and a Buick Skylark registered to COLEMAN. The Buick Skylark was parked closest to the house and it was difficult to obtain the license plate. Another vehicle parked on the street was also registered to THICKLIN at the residence.

8. On August 9, 2006 I caused an Administrative Subpoena to be issued to Alabama Power Company requesting that they provide current subscriber information for the residence. Alabama Power Company responded with the requested information, which stated that Flora THICKLIN was the billed subscriber.

9. COLEMAN provided 3236 Susan Drive as his address when he received his Alabama Driver's license in March 2005. A check of database records shows that Curtis Jerome COLEMAN, age 52, resides at 3236 Susan Drive. Based on my training and experience, I believe COLEMAN is attempting to conceal the identity of his residence by using his father's address on documents. It is common for drug distributors to do so in an attempt to conceal illegal drugs, the proceeds derived from the sale of illegal drugs, and evidence relating to the distribution of illegal drugs from law enforcement.

Based on my training and experience, previously recited, and my participation in numerous investigations involving narcotics importation and distribution organizations

and in financial investigations involving large amounts of controlled substances, currency and other monetary instruments, I am aware of the following;

    a. that large-scale narcotics traffickers commonly maintain on hand large amounts of U.S. Currency in order to maintain and finance their ongoing narcotics business;

    b. that individuals engaged in narcotics trafficking and/or money laundering commonly maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other paper relating to the illegal distribution of controlled substances; that these same individuals commonly "front" (provide on consignment) narcotics to their clients; that the aforementioned books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers are maintained where the narcotics traffickers have ready access to them;

    c. narcotics traffickers and those engaged in the laundering of money commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers for their associates in the trafficking organization;

    d. that, in order to accomplish this concealment, narcotics traffickers frequently build "stash" places within their residences or businesses. That there are a number of publications available instructing where and how to build "stash" places. Copies of these types of publications have been found in the residences and businesses of narcotics traffickers;

    e. that it is common for persons involved in large-scale narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letter of credit, money orders, bank drafts, cashiers checks, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences, businesses or other locations which they maintain dominion and control over;

    f. that large scale narcotics traffickers often utilize electronic equipment such as computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described above

    g. that the courts have recognized that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried and concealed may establish probable cause that there is a substantial connection between the questionable currency and narcotics transactions;

    h. that narcotics traffickers at times become fearful that their extravagant spending habits will bring them under scrutiny by the Internal Revenue Service or other federal,

3

state, or local agencies. In order to legitimize their spending, these traffickers file tax returns reporting income commensurate with the amount of money they have spent during the year, which they feel can be traced and documented by the government. The "source" of their income reported on these returns is usually falsely stated, misleading or generic in terms. Retained copies of these returns are commonly kept by the traffickers in their residences and businesses.

    i. Drug traffickers commonly maintain in their wallet, purse or pockets, telephone numbers of drug associates, safe deposit box keys, cash receipts of expenditures or other documents such as business cards, providing leads to the disposition of drug proceeds. Therefore, it is requested that all aforementioned persons be searched for evidence of drug trafficking.

    j. Drug traffickers are also known to use their vehicles to transport drugs, store drug proceeds and store records relating to their drug activities, such as gasoline tickets revealing out of town trips. Therefore, it is requested that all vehicles on the aforementioned premises be searched for evidence of drug trafficking.

    k. That as an experienced agent, your affiant states that controlled substances can be sold in various quantities which could be small in size. Your affidavit states that because these items are very small, they can easily be hidden on one's person, on one's residence in closed or locked containers, such as file cabinets, safes, vaults, drawers, luggage, briefcases, valises, boxes, cans, bags, purses, and any other closed or locked hiding places. Drug dealers conceal their narcotics in these places as previously described in order to prevent drug "rip-offs" by drug dealers and users and in order to avoid detection and seizure by law enforcement officers.

    l. That it has been your affiant's experience that such items as utility bills, and/or rent receipts are essential in the investigation of narcotics violations in that they tend to establish control of the residence.

    m. That it has also been your affiant's experience that persons who deal in controlled substances will quite often "front" drugs to buyers and keep records of these in order to keep track of who owes what. These records are commonly referred to as "totes" or "ledgers" and will quite often be found in one's residence and on one's person. Records of this nature are important to the investigation in that they tend to show the intent of the person in possession of these drugs.

    n. That it has been your affiant's experience in searching numerous residences for drug violations that it is not uncommon to find such items as scales and/or plastic baggies and/or cigarette rolling papers or other drug paraphernalia, and that these items are essential in the investigations of drug violations in that they tend to establish the intent of possession for sale.

    o. That it has also been your affiant's experience that drug manufacturers and traffickers commonly have in their possession, that is on their person, at their residence,

4

and/or their businesses, firearms and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure drug trafficker's property or enterprise.

      p. That it has also been your affiant's experience during numerous searches of residences and persons trafficking in controlled substances, that your affiant and other law enforcement agents have on numerous occasions found photographs and videotapes of the residents of said properties and their associates who were involved with them in criminal activities. Drug traffickers frequently take or cause to be taken photographs or videotapes of themselves, their associates, their property, and their product and that these traffickers usually maintain these photos and tapes in their possession.

      q. That it has also been your affiant's experience that drug traffickers often purchase and/or title assets in fictitious names, aliases, or in the names of their relatives, associates or business entities, to avoid detection and seizure of these assets by government agencies. Also, that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them.

      r. That it has also been your affiant's experience that it is common for drug traffickers to use cellular telephones because they are portable and often more difficult to investigate.

Based upon the above described facts, information, observations, and training I believe that probable cause exists for the issuance of a search warrant for 1324 Summerfield Place, Montgomery, Alabama . I believe that a search of said properties will reveal evidence relating to the Conspiracy to Distribute a Controlled Substance, the Distribution of a Controlled Substance, and Possession With the Intent to Distribute a Controlled Substance in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

_____
Neill Thompson
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this _____ day of _____, 2006, by Neill Thompson, Special Agent, Drug Enforcement Administration.

_____
UNITED STATES MAGISTRATE JUDGE

5